Green & Tsai
Attorneys at Law
870 Market Street, Suite 714
San Francisco, California  94102
Tel: (415) 834-9277
Fax: (415) 834-9278

Jenny Tsai (CA Bar #203364)
Attorney for Petitioner

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Noreen Canda CORTES<br>Petitioner,<br><br>v.<br><br>Jefferson SESSIONS, ATTORNEY GENERAL OF THE UNITED STATES U.S. Department of Homeland Security; United States Citizenship and Immigration Services, Respondent. | Action Under the APA<br><br>(Administrative Procedure<br><br>Act)[5 U.S.C. 706(2)(A)] |

### PREFATORY COMMENT

Noreen Canda Cortes ("petitioner") brings this case before this Court in the hopes that she can remain unified with her U.S. citizen husband. Indeed, her husband, Richard Thompkins Doldol, became a U.S. citizen, in part, to be able to petition her as an immediate relative.

Outside of the Adam Walsh Act preclusion, there appears to be no impediment to an I-130, Petition for Alien Relative approval. Their marital union was made out of the love they share. They both have common interests and common goals. They live together. Their relationship is strong.

Petitioner is a native and citizen of the Philippines. She entered the country on a visitors visa in 2003. She has remained in the U.S. since that time. She has never had any problems whatsoever with her husband. She feels safe with him.

Ms. Cortes is 49 years old; her husband is 39 years old. As a threshold, the purpose of the law is not served in this case. The facts in this case are at tension with the Adam Walsh Act. (The Adam Walsh Act. Pub. L. No. 109-248, 120 Stat. 587).

The stated Legislative purpose of the law is,

> "to protect *children* from sexual exploitation and violent crime, to prevent *child* abuse and *child* pornography, to promote internet safety and to honor the memory of Adam Walsh and other *child* crime victims." 120 Stat. at 587.

While the immigration provisions of the Adam Walsh Act allow

for the procedure employed in this case, no rational

compassionate, neutral observer could argue that the *intent* of the

Act is present in this case. Ms. Cortes is not in danger from her

husband. Instead, the only person who is being punished is her.

She will be unable to adjust status and is facing the prospect of

remaining in this country without status and with prospects of

removal.

### I. STATEMENT OF FACTS/FRAMING OF THE ISSUE

Ms. Cortes is a native and citizen of the Philippines. She

entered the U.S. in 2003 on a visitors visa. (See Exhibit A –

Passport and Visitors Visa). She is the immediate relative spouse

of Richard Thompkins Doldol. Ms. Cortes is 49 years old. Her

husband is 39 years old. He is a United States citizen. (Exhibit B

– Naturalization Certificate). They were married on December 13,

2012. (See Exhibit C – Marriage Certificate).

On or around February 25, 2013, husband Richard Thompkins

Doldol filed a Petition for Alien Relative (Form I-130) on

behalf of his wife, Noreen Canda Cortes. (See Exhibit D – USCIS

Filing Receipt). On March 31, 2014, the USCIS provided Mr.

Doldol with an Intent to Deny his petition but provided him with

an opportunity to submit documentary evidence that will overcome

the grounds for the intended denial. He did submit such evidence

in his response. (See Exhibit E – Response to Intent to Deny).

In this response, Mr. Doldol presented a wealth of

documentation of no risk that included a therapist report stating low recidivism, reference letters, his declaration, and most importantly, a declaration from Ms. Cortes stating that she feels she is in no danger from her husband. (See Exhibit E at K).

However, the USCIS denied his petition on April 27, 2015. The USCIS denial notice was based on the Adam Walsh Act that prohibits US citizens and lawful residents who have been convicted of certain specified offenses against a minor from filing family based petitions. (8 U.S.C. 1154(a)(1)(viii)(I) et seq.) (See Exhibit F - Relevant Text of the Statute).

In this case, petitioner was convicted of California Penal Code Sec. 261.5(d), sex with a minor – perpetrator over 21 and victim less than 16. (See Exhibit E at D). The victim was not his spouse.

The Notice of Appeal to the Board of Immigration Appeals from a Decision of a DHS Officer (E-29) was filed on May 21, 2015. On February 28, 2017, the Board issued their dismissal of his appeal. (See Exhibit G – BIA Decision). The BIA is erroneous in their denial decision in failing to adequately analyze case law relied-upon in their denial.

The Board cites *Matter of Calcano De Millan,* 26 I&N Dec. 904 (BIA 2017) to support their denial. They state, "we held that a United States citizen petitioner has been 'convicted' for purposes of the Adam Walsh Act where a judgment of guilt has

been entered or where a plea, finding, or admission of acts

establishes guilt and some form of punishment has been imposed.

*Id.* at 906-07. We also held that relief granted under California

Penal Code § 1203.4 does not remove the existence of a

conviction if a petitioner is seeking a visa petition for an

alien beneficiary. *Id.* at 908. We therefore affirm the

Director's determination that the petitioner has a relevant

conviction despite having obtained post-conviction relief under

California Penal Code § 1203.4." (See Exhibit G - BIA Dec. at 1-

2).

Moreover, the Board's February 28, 2017 denial failed to

address arguments relating to retroactivity and that this case

is in positive alignment with a positive reading of *Vartelas v.*

*Holder.* (566 U.S. ____) (2012)).

Finally, in their denial decision, the Board noted "[Mr.

Doldol]'s argument that the Director erred in finding that he

did not establish that he poses no risk to the beneficiary." *See*

Petitioner's Notice of Appeal, Attachment at 1-2. *Matter of*

*Aceijas-Quiroz,* 26 I&N Dec. 294 (BIA 2014)." (See Exhibit G -

BIA Dec. at 2, Paragraph 3). However, it failed to exercise

review regarding that no-risk determination.

From the above, Ms. Cortes argues that the statute and the

concomitant regulations, violate the Equal Protection Clause in

this case as she is being treated the same as if she were a

vulnerable minor and in genuine danger from a predatory adult. It is erroneous to take the position that this 49 year old wife is in any danger from her 39 year old husband who she has expressed no danger from. Rather than being protected through legal residency, she is subject to future removal.

Also, Ms. Cortes argues that the decision of the Administrative Agency is a violation of due process as it fails to meaningfully address the "danger to the beneficiary" issue and it fails to engage in a particularized review of the facts of the case - in derogation of their own guidelines.

Lastly, Ms. Cortes will argue that the action of the respondent was an impermissible retroactive application of the statute. Here, the Board should have reviewed the Director's finding that husband does not pose a risk to the beneficiary petition.

In this, petitioner maintains many of the same arguments made before the USCIS and Board of Immigration Appeals.

## II. <u>JURISDICTION UNDER THE APA</u>

The APA is an administrative remedy that exists to fill in the interstices in the law for precisely the situation found in the present case. The APA allows challenges to agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(2)(A).

The APA governs the review of agency action where a person has suffered a "legal wrong" or has been "adversely affected by agency action." 5 U.S.C. 702. The broadness of the statutory language suggests that jurisdiction should be liberally construed.

Now, under the APA, the Federal Courts can review and remand under the specific authority of the APA however, it can also fashion a remedy under 28 USC 2201.

Under 28 USC 2201,

"in a case of actual controversy within its jurisdiction, ….. (exceptions not applicable here) any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

In this case, the crafting of a remedy is essential.

### III. THE USCIS AND BIA DENIAL DECISIONS ARE ARBITRARY, CAPRICIOUS AND FAILS TO CONFORM TO THE GOVERNMENT'S OWN GUIDELINES

The statute is silent as to the standard to be employed in determining the "danger to the beneficiary" test.

The Government adjudicators may have been guided by the "Aytes Memo" of February 8, 2007.

The factors to be considered are:

- The nature and severity of the petitioner's specified offense against a minor, including all facts and circumstances underlying the offense;

- The petitioner's criminal history;

7

- The nature, severity and mitigating circumstances of any arrest, convictions or history of alcohol or substance abuse, sexual child abuse, domestic violence or other violent criminal behavior that may pose a risk to the safety or well-being of the principal beneficiary or any derivative beneficiary;

- The relation of the petitioner to the principal beneficiary and any derivative beneficiary;

- The age and, if relevant, the gender of the beneficiary;

-Whether the petitioner and the beneficiary will be residing in the same household or within close proximity of one another;

-The degree of rehabilitation or behavior modification  that may alleviate any risk posed by the petitioner to the beneficiary, evidenced by successful completion of appropriate consulting or rehabilitation programs and the significant passage of time between incidence of violent, criminal or abusive behavior and the submission of the petition." (See Exhibit H – Aytes Memo).


The memo goes on to state that they must presume that risk exists in any case where the intended beneficiary is a child. In cases where none of the intended beneficiaries are children, no such presumption exists.

In this case, the original USCIS no-risk denial does not emphasize that no children are involved in this relationship. As noted, petitioner is a grown woman; husband poses no risk to her. There are no children in their household.

There is no subject matter jurisdiction based on the interplay between 8 USC 154 (a) of the Adam Walsh Act that holds that these determinations are within the Homeland Security's "sole and unreviewable discretion" and 8 USC 1252 (a) (2) (2)

(B)(ii) that holds that "no court shall have jurisdiction to review-

> (ii) any other decision of action of the Attorney General or the Secretary Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."

It is argued that the APA specifically exists to cover the situation where one is **not** challenging the discretionary decision but the irrational and capricious manner in which that discretion was exercised. It is argued that the director's decision, while couched as discretion, would be susceptible to review under the APA.

Next, the preclusive language has been narrowly construed by the Supreme Court. INS v. St. Cyr, 553 U.S. 289; Kukana v. Holder, 558 US 233 (2010). "The Board may review all questions arising in appeals from decisions issued by Service officers *de novo.* 8 C.F.R. § 1003.1(d)(3)(iii)(2013)" It also states, "*See Matter of Ruiz-Massieu,* 22 I&N Dec. 833, 842-46 (BIA 1999) (finding that the Attorney General may not review a determination by the Secretary of State on a question of foreign policy, but that the Secretary must set forth a facially reasonable basis for a determination)." (See *Matter of Aceijas-Quiroz*, 26 I&N Dec. 294, 302 (BIA 2014)).

Next, the 9th Circuit has consistently held that there is jurisdiction to review the ***manner*** of analysis the Agency employed

in reaching a discretionary determination.

   For instance, under section 8 USC 1299b (b) an alien can apply for residency provided he or she has lived in the US for ten years, is a person of good moral character and he or she can demonstrate exceptional and extremely unusual hardship to one's lawful spouse, parent or child.

   The final component of hardship is discretionary and the 9th has held that there is no subject matter discretion over that determination. <u>Martinez-Rosas v. Gonzalez</u>, 424 F.3d. 926 (9th Cir. 2005); <u>Ramirez-Perez v. Ashcroft,</u> 336 F. 3d. 1001 (9th Cir. 2003) and <u>Romero-Torres v. Ashcroft</u>, 327 F. 3d. 887 (9th Cir. 2003).

   However, the 9th Circuit has found jurisdiction where the <u>manner</u> in which the lower court made that discretionary determination was irrational or contrary to law.

   In <u>Figuerora v. Mukasey</u>, 547 F.3d. 487 (9th Cir. 2008),which occurred in the above context, the 9th Circuit held that the failure to consider prospective hardship took the matter out of the purely discretionary and was contrary to law and they remanded the case for a thoroughgoing analysis.

   Similarly, in <u>Artega de Alvarez v. Holder</u>, 704 F.3d. 730 (9th Cir. 2012) the 9th Circuit found jurisdiction where the Appellate body denied the case on discretionary grounds.

   However, the panel found that the Board of Immigration Appeals considered the legally irrelevant factor of whether or not

the alien had an administrative avenue to legally return to the US in their discretionary analysis.

The 9th has engaged in the same analysis in <u>Afridi v. Gonzlaez,</u> 442 F.3d. 1212, 1218 (9th Cir, 2006) - the lower tribunal employed an erroneous legal standard on the nature of a criminal conviction in the context of an asylum application; <u>Hernandez v. Ashcfort</u>, 345 F.3d. 824 (9rth Cir. 2003)- lower tribunal  ignored existing precedent in terms of the viability of the underlying marriage at the inception of the marriage.

In another context, the 9th has held that the a *priori* error in applying the good moral character component of the statute infected the exercise of discretion.  <u>Beltran-Tirado v. INS</u>, 213 F.3d 1179 (9th Cir. 2000)

Here, the Director's decision reached their discretionary decision without adequately looking at all the evidence presented. The USCIS denial was flawed and did not provide a reasonable basis for a determination. This is especially the case since Mr. Doldol prepared a strong packet that was not truly addressed by USCIS. For example, within the certified MFT evaluation regarding risk assessment stated, "The LS/CMI places Richard Doldol in the **VERY LOW RISK/NEED LEVEL."** (See Exhibit E at E).

Based on past research with other community offenders in the Very Low Risk/Need level, **Richard Doldol has approximately 1% chance of recidivating**." (Id.)

The USCIS denial was also in error in that Mr. Doldol presented evidence demonstrating intervening good and exemplary service to the community and caregiver services. He provided extensive evidence demonstrating his integration and acceptance and high regard that he held in the community.

Since Mr. Doldol's past offense involved a minor, he has been intent on leading a blemish-free life and has neither sustained any further arrests nor convictions.  Under Yepes-Prado v. U.S. INS, 10 F.3d 1372-73 (9th Cir. 1993), "rehabilitation can be established by the absence of subsequent criminal conduct."  See also Georgiu v. INS, 90 F.3d 374 (9th Cir. 1996).

However, in their denial, USCIS appear to negate the effect of this documentation since they state,

> "The personal letters, employment letters and other testimonial evidence speaks to your character and work ethic. The letters do not address the nature of your conviction or speak to an assessment of the  risk you may pose to the safety and well-being of the beneficiary."
> (See Exhibit H - USCIS Dec. at 4, Paragraph 4).

Importantly, his wife, Ms. Cortes wrote an affidavit which essentially indicated that he is no risk. They fail to consider the affidavit accordingly. The denial stated, "The affidavit

written by the beneficiary, Noreen Cortes, reports how she met you that she has been aware of your criminal conviction. She states that you are a good hearted person and that you have no vices. The affidavit is evidence that you maintain a good relationship with your wife but does not address the potential risk that you may pose."

Importantly, in rebuttal to the USCIS determination, the declaration *also stated*,

> "I know very well that Richard is and always be a loving, caring, goodhearted and beautiful person in and out. I never felt any harm with him and absolutely not in any way is and will be hurt or injured. *In fact, I always feel secure with him.*" (Emphasis added). (See Exhibit E at K).

Their relationship is close and Ms. Cortes knows all about Mr. Doldol's past history. She states,

> "Long before Richard and I got married, I've already known and been aware of what happened to him back in 1999, that is being convicted of having sex with a minor, who was his girlfriend then." (Id.)

Simply put, beneficiary's statement and her own personal assessment should be given greater, if not, decisive and dispositive weight. Therefore, those concerns to safeguard Ms. Cortes have been addressed by herself along with documents submitted by Mr. Doldol.

Therefore, the no risk determination lacked reasonable explanation and should have received further review by the Board.

On due process, it has been unambiguously held that aliens in administrative proceedings are entitled to both substantive and procedural due process right under our constitution. Reno V. Flores, 507 U.S. 292, 306, (1993). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation hearings."

This road has been traveled before and it has been held that even aliens unlawfully present in the United States, like Ms. Cortes, are entitled to the protections of the Fifth Amendment. Doherty v. Thornbough, 943 F.3d. 204, 209 (2d. Cir. 1991).

It is argued that any ruling that violates due process must also, perforce, be "arbitrary, capricious and contrary to law." In a case such as this, it is conceded that the due process protections afforded the petitioner and all other similarly situated aliens, is rather limited.

In this context, the due process that the petitioner is entitled to is precisely coterminous with the due process rights that are conferred, in this case, by the Executive Branch through its regulations.

An alien is entitled to ***at least*** the due process conferred by Regulations and the failure to provide the due process that

14

is provided for by the regulations is flatly unconstitutional. Yellin v. United States, 374 U.S. 109 (1963); Accardi v. Shaughnessy 347 U.S. 260 (1954); Bridges v. Wixon, 326 U.S. 135 (1945)

By ignoring their own standards, and most importantly, not adequately addressing the lack of danger to Ms. Cortes, the decision, in the words of the APA is "arbitrary, capricious, an abuse of discretion…" and "otherwise not in accordance with law."

### IV. THE STATUTE VIOLATES EQUAL PROTECTION AS APPLIED TO THIS PETITIONER

The 14th Amendment mandates that "no state shall make or enforce any law which shall…deny any person within its jurisdiction the equal protection of the law. (US Const. Amen. XIV section 1).

This guarantee of Equal Protection applies to the federal government through the Fifth Amendment due process clause. Catholic Social Service v. INS, 232 F.3d. 1139, 1152 (9th Cir. 200). The Equal Protection clause applies to aliens. Yick Wo V. Hopkins, 118 U.S 356 369 (1886).

The disparate treatment of similarly situated aliens under the immigration laws implicates the guarantee of Equal Protection. Aguirre v. INS, 79 F.3d. 315, 317 (9th Cir.1996). The Government must therefore demonstrate a rational basis for treating aliens disparately. Reno v. Flores, 507 U.S. 292, 306.

15

There is little doubt that when the Immigration Service distinguishes between groups of aliens, the minimal scrutiny test is employed.

Under this test, the distinction must be only rationally related to a legitimate government interest. Clebourne v. Cleveland Living Center Inc. 473, U.S. 432, 440 (1985). A legislative classification must be wholly irrational to violate equal protection." Mathews v. Diaz, 426 U.S. 67 (1997)

Therefore, federal classifications between groups of aliens are presumptively valid unless wholly irrational. Nyquist v. Mauclet, 432 U.S. 1, 7 (1977); Sudomir v. McMahon, 767 F.2d. 156, 1464 (9th Cir. 1985); U.S. v. Baratas-Guillen 632 F.2d. 749 (9th Cir. 1980).

There is no equal protection violation where the distinction between the classes is not arbitrary or unreasonable. Komarenko v. INS, 35 F.3d 432, 435 (9th Cir. 1994).

However, "deference is not abdication" and the federal courts have not hesitated to find an equal protection violation where the distinction is completely arbitrary and irrational and serves no legitimate governmental purpose.

An Equal Protection violation was found in Garberding v. INS, 30 F.3d 1187(9th Cir.1994). There, the prevailing policy of the INS and the BIA was that an expungement of a first time simple possession controlled substance conviction would be honored and

16

thus not be able to support a charge of deportability, <u>only</u> if the state's statutory scheme was an exact counterpoint to the Federal First Offender Statute.

This distinction did not pass constitutional muster.

"Gaberding had the bad luck or poor judgement to possess her marijuana in Montana. The state legislature of Montana has seen fit to extend the privilege of expungement to persons who are convicted of drug offenses more serious than Gaberdings simple first possession. It is this fortuitous circumstance, not Gaberdings conduct, which the INS used to distinguish her deportation." at 1191.

In <u>Cordes v. Gonzalez</u>, 421 F.3d. 889 (9th Cir. 2005), the court found an equal protection violation where the statute created the irrational result of affording discretionary relief from removal to similarly situated Legal Residents who committed demonstrably worse crimes than the Petitioner.

Next, the Courts have found equal protection violations where the mere negative fortuity of leaving the county and returning conferred greater rights in relief from removal than aliens who never left. <u>Servin- Espinoza v. Ashcroft</u>, 309 F.3d. 1193, 1198 (9th Cir. 2002)

In this case, the general class of aliens are the ***adult*** beneficiaries of immediate relative visa petitions filed by a United Citizen or lawful permanent resident spouse. Within that group of adult aliens, one class will have their visa granted while the other class of adult aliens will be denied under the Adam Walsh Act.

The latter will be denied not for any disqualifying behavior nor for any sense that they are undeserving but for the repugnant behavior of their spouse. This in no way fosters the stated goal of the Adam Walsh Act which is the ***protection of minors***.

There is no punitive component of the Adam Walsh Act, it is solely to protect minor children from sexual predators. Petitioner's husband has expressed regret, remorse, and rehabilitation for his prior conduct. He wishes to begin his new life with petitioner. It is unfortunate that due to the past of this husband that the USCIS would never let him overcome in his hopes to move forward in the I-130 process on behalf of petitioner wife to gain residency.

She is no more or less deserving than any other adult beneficiary of an immediately relative spouse petition.

> "Fundamental fairness dictates that …aliens who are in like circumstances, but for irrelevant and fortuitous factors, be treated in a like manner." Francis, supra, at 273.

Under this Equal Protection analysis, petitioner, just like the aliens, in Cordes and Gaberding is denied a benefit for behavior that is completely unrelated to the behavior or desirability of the alien. In Cordes, it was legislation that was passed well after the alien's guilty plea while in Gaberding, it was based on the different state's rehabilitative statutes and not the behavior of the alien.

Here, petitioner's preclusion of the I-130 is based on the past conduct of her husband but it is utterly unrelated to the activity of the alien.

**The statute is unconstitutional "as applied" to petitioner**.

A federal statue is presumed constitutional unless shown otherwise.

A facial challenge to a legislative act… is the most difficult challenge to mount successfully since the challenger must establish that there is no set of circumstances under which the Act would be valid. US v. Salerno, 481 US 739, 745 (1987).

In an "as applied" challenge the alien need only show that the statute is unconstitutional as applied to him or her. Szeto v. Reno, 2000 US Dist. LEXIS 6738 (N.D. 2000); Dhoc v. DeMoore, 59 F. Supp. 995 (N.D. 1994). In this case, the "as applied" challenge has particular force in the "rational basis" component of the analysis.

There is no question that petitioner is denied a benefit based on facts completely unrelated to her behavior. The purpose of the Adam Walsh Act is the protection of children.

As we have repeated, no rational compassionate, neutral observer could argue that the intent of the Act is present in this case as petitioner is clearly in no danger from her husband and the only person who is being punished is the blameless petitioner who has lost her only legal avenue to gain legal residency and who is facing the possibility of removal from the United States.

When viewed through the prism of this case, the statue violates Equal Protection as applied to this alien as the legislative goal of protecting minors in not present in this case.

## V. **THE GOVERNMENT'S ACTION IN DENYING THE PETITION IS AN IMPERMISSIBLE RETROACTIVE APPLICATION OF THE STATUTE**.

The USCIS denial is also in error relating to retroactivity and petitioner's case is in positive alignment with a positive reading of *Vartelas v. Holder.*

Further, the BIA denial decision does not address any arguments raised by Mr. Doldol regarding retroactivity. At various times in Mr. Doldol's BIA appeal, he has noted the retroactivity concerns raised in the I-130 denial. Indeed, Mr. Doldol had his expungements performed years before he filed this I-130 petition. Eliminating the effect of this expungement has an impermissibly retroactive effect.

"Under general rules of statutory construction, a substantive, noncurative, adverse change in administrative rules is not to be applied retroactively unless the language of both the administrative rule and the statute authorizing the rule requires such a result." *Uzuegbu v. Caplinger,* 745 F.Supp.1200, 1215 (E.D. La 1990).

In *Hernandez de Anderson v. Gonzales,* 497 F.3d 927, 937-44 (9th Cir. 2007) where it notes that in Step 2 of *Landgraf,* the issue is whether reliance on the law at the time is objectively reasonable; personal reliance is not a factor. Indeed, these

20

same arguments should be applied to the USCIS' abuse of discretion in their decision as well. (See *Landgraf v. USI Film Products*, 511 U.S. 244 (1994)).

Mr. Doldol not only raises the retroactivity argument but also disputes the logic in *Matter of Jackson and Erandio*, 26 I&N Dec. 314 (BIA 2014). There, the Board held that the Adam Walsh Act (AWA) does not have an impermissibly retroactive effect when applied to convictions that occurred before AWA was enacted.

Again, the Board fails to cite either their own decision in *Jackson and Erandio* or mention the retroactivity argument in their denial. In *Jackson and Erandio* itself, the perceived basis to deny stems from a footnote reliance in the Supreme Court case of *Vartelas v. Holder*. They state, "[T]hese statutes do not operate retroactively. Rather, they address dangers that arise postenactment…" *Vartelas v. Holder,* 132 S. Ct. at 1489 n.7" (See *Matter of Jackson and Erandio*, 26 I&N Dec. 314, 318 (BIA 2014). This ignores the main holding in *Vartelas* on the importance of weighing the liberty interest at stake in any retroactivity application.

The main body and concerns of the Supreme Court in *Vartelas* in cases such as petitioner's raise a number of constitutional and federal questions. *Vartelas* states, "[t]he presumption against retroactive legislation, the Court recalled in Landgraf, 'embodies a legal doctrine centuries older than our Republic.'

Id., at 265. Several provisions of the Constitution, the Court noted, embrace the doctrine, among them, the Ex Post Facto Clause, the Contract Clause, and the Fifth Amendment's Due Process Clause. Id., at 266." (See *Vartelas v. Holder*, 566 U.S. 7 (2011)). In *Vartelas*, the Court is careful to avoid generalization and view every episode of retroactivity on a case-by-case basis.

The separation of Mr. Doldol from his wife is a severe disability that deserves such a reasonable explanation. For example, on new disabilities in *Vartelas*, the Supreme Court noted that that petitioner, "Once able to journey abroad to fulfill religious obligations, attend funerals and weddings of family members, tend to vital financial interests, or respond to family emergencies, permanent residents situated as Vartelas is now face potential banishment. (See *Vartelas* at 9).

Similar or worse hardships inhere if Mr. Doldol is separated from his wife. At the very least, the Board's reasoning in *Jackson and Erandio* needs further explanation than that provided in the reference to the *Vartelas* footnote. It is of great import that even in the footnote, those instances where the Supreme Court appears to agree as permissible as retroactivity examples relate to mainly regulatory prohibitions and not direct infringement on the ability to remain with one's spouse.

The Supreme Court in <u>Vartelas v. Holder</u>, 132 S.Ct. 1479, 1491 acknowledged that the retroactivity analysis does not turn on reliance. The court held that reliance is a strong factor militating in favor of a prospective construction.

> "while the presumption against retroactive application of a statute does not require a showing of detrimental reliance.. reasonable reliance is among the familiar considerations animation the presumption.. although not a necessary predicate for invoking the anti-retroactive principle, the likelihood of reliance on prior law strengthens the cases of reading a newly enacted law prospectively. <u>Vartelas</u>, at 1491.

In this case, close textual analysis reveals no intent that it should have retroactive effect, indeed a reasonable interpretation tilts in favor of a prospective construction.

The preclusive section of the Adam Walsh Act amends  8 USC 1154 at 8 USC 1154 (a) (1) (A) viii. The general principle is set forth a 1154 (a) (1) (A) (i) - ***Petitioning Procedure***

> "except as provided in clause (viii) any citizen.. may file a petition with the Attorney General…"

This is forward sounding language in the sense that it contemplates future petitions.

Next, the preclusive language states,

> "(viii) (I) Clause shall not apply to a citizen if the United States who has been convicted of a specific offense against a minor, unless the Secretary of the Homeland Security, in the Secretary's sole and unbelievable discretion, determines that the citizen poses no risk to the align with respect to whom a  petition described in clause (i) is filed."

23

From this, it is axiomatic that doubts and ambiguities should be resolved in favor of the alien. <u>Fong Haw v. Theban</u>, 33 US 6 (1948) <u>Leocal v. Ashcroft</u>, 542 US 1 (2004). Thus, the Adam Walsh Act fails on retroactivity as well.

**VI. <u>PRAYER FOR RELIEF</u>**

WHEREFORE, based upon the above reasoning/arguments, Mr. Doldol respectfully requests that this Court:

1. Direct the BIA to review the no-risk determination made by USCIS;

2.   Direct USCIS to continue Mr. Doldol's I-130 petition process for his wife; and

3.   Any other relief the court deems is right and just.


Dated: March 30, 2017     /s/ Jenny Tsai _____
                          Jenny Tsai, Attorney for Petitioner