UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOREEN CANDA CORTES,<br>Plaintiff,<br>v.<br>JEFFERSON B. SESSIONS, et al.,<br>Defendants. | Case No. 17-cv-1773-PJH<br><br>**ORDER GRANTING MOTION TO DISMISS** |

The motion of defendants U.S. Attorney General Jefferson B. Sessions, U.S. Department of Homeland Security, and U.S. Citizenship and Immigration Services (USCIS) ("the government"), to dismiss the above-entitled action for lack of subject matter jurisdiction and failure to state a claim came on for hearing before this court on October 11, 2017. Plaintiff appeared by her counsel Roger Green and Jenny Tsai, and defendants appeared by their counsel Assistant United States Attorney Steven Platt. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion, as follows.

**BACKGROUND**

Plaintiff Noreen Canda Cortes ("Cortes") seeks review of a decision by the Board of Immigration Appeals ("BIA") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). She also asserts claims of constitutional violations.

Cortes is a native and citizen of the Philippines. She alleges that she came to the United States on a tourist visa in 2003 and never left. See Action Under the APA (Doc. 3) ("Amended Complaint" or "FAC") at 3 & Exh. A. According to defendants, Cortes' visa

expired on September 7, 2003. In December 2012, she married Richard Tompkins Doldol ("Doldol"), FAC at 2 & Exh. C, who was also born in the Philippines. Doldol was naturalized as a United States citizen in July 2012, allegedly so he could petition for Cortes to become a permanent resident of the U.S. FAC at 1-2.

The Immigration and Nationality Act ("INA") allows a U.S. citizen to file a petition seeking to classify his/her foreign national spouse as an immediate relative for the purpose of allowing him/her to immigrate to the United States. See 8 U.S.C. 1154(a)(1)(A)(i). In 2006, Congress amended the Adam Walsh Child Safety and Protection Act of 2006, Pub. L. No. 109-248 ("Adam Walsh Act") to amend the INA to prohibit a United States citizen who has been convicted of any "specified offense against a minor" from filing a family-based visa petition on behalf of an alien beneficiary "unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien . . . ." 8 U.S.C. § 1154(a)(1)(A)(viii); see also 42 U.S.C. § 16911(7), (14) (defining the term "specified offense against a minor").

Congress delegated to USCIS the authority to adjudicate immigrant visa petitions, including those seeking to classify aliens as immediate relatives. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 451(b)(1) (Nov. 25, 2002), codified at 6 U.S.C. § 271(b)(1)). Congress also delegated authority to USCIS to establish policies governing the adjudication of immigrant visa petitions. See 6 U.S.C. § 451(a)(3)(A).

Section 1154(a)(1) does not include any standards for determining whether a petitioner poses a "risk" to the alien beneficiary of the visa petition. On February 8, 2007, USCIS issued guidance regarding the implementation of the Adam Walsh Act's amendments to the INA. See Memorandum from Michael Aytes, Associate Director, Domestic Operations, Guidance for Adjudication of Family-Based Petitions and I-129F Petition for Alien Fiancé(e) under the Adam Walsh Child Protection and Safety Act of 2006 (Feb. 8, 2007) ("Aytes Memo"). FAC Exh. H.

Under this guidance, a citizen who has been convicted of a specified offense

against a minor and who is seeking approval of a family-based visa petition "must submit evidence of rehabilitation and any other relevant evidence that clearly demonstrates, beyond any reasonable doubt, that he or she poses no risk to the safety and well-being of his or her intended beneficiary(ies)." Id. at 5. This showing is required even when "none of the intended beneficiaries are children," in which case the question is "whether the petitioner poses any risk to the safety or well-being of the adult beneficiary." Id. at 7.

On September 24, 2008, USCIS issued further guidance regarding the adjudication of petitions under the Adam Walsh Act. See Memorandum from Donald Neufeld, Acting Assoc. Dir., USCIS, to Field Leadership (Sept. 24, 2008). This guidance states that

> USCIS interprets the "poses no risk to the beneficiary" provision to mean that the petitioner must pose no risk to the safety or well-being of the beneficiary, including the principal beneficiary and any alien derivative beneficiary. A petitioner who has been convicted of a specified offense against a minor must submit evidence that clearly demonstrates, beyond any reasonable doubt, that he or she poses no risk to the safety and well-being of his or her intended beneficiary(ies). Generally, rehabilitation is paramount to the "poses no risk" determination.

Id. at 9. In addition, "given the nature and severity of many of the underlying offenses and the intent of the AWA, approval recommendations should be rare." Id. at 2.

On February 25, 2013, Doldol filed a Form I-130 Petition for Alien Relative Approval. FAC Exh. D.[1] On March 31, 2014, USCIS provided Doldol with a Notice of Intent to Deny the I-130 Petition, pursuant to the Adam Walsh Act. See FAC Exh. E. The reason stated for the proposed denial of the visa petition was that Doldol had previously (July 1999) been convicted of a misdemeanor sex offense against a minor (perpetrator over 21 having sex with minor under 16), for which he was sentenced to 90 days confinement and 24 months' probation.

In the Notice of Intent to Deny, USCIS advised Doldol that he could submit

---

[1] A U.S. citizen may seek classification of his foreign national spouse as an immediate relative by filing a Form I-130 petition with USCIS. 8 C.F.R. §§ 204.1(a)(1), 204.2(a)(1).

3

additional evidence in support of the visa petition. USCIS stated that the evidence must "clearly establish" either that Doldol "did not commit a 'specified offense against a minor' within the meaning of section 402 of the Adam Walsh Act;" or that "the criminal offense [he] committed is not a 'specified offense against a minor' as set forth in section 111(7) of the Adam Walsh Act[;]" or that it must "establish beyond any reasonable doubt that [he] pose[s] no risk to the beneficiary." FAC Exh. E.

It is undisputed that the offense of which Doldol was convicted was a "specified offense" under the Adam Walsh Act. Where a petitioner seeks a visa for an adult beneficiary, USCIS "closely examine[s] the petitioner's specified offense and other past criminal acts to determine whether the petitioner poses any risk to the safety or well-being of the adult beneficiary." Aytes Memo at 7.

USCIS has published a nonexclusive list of documents that the petitioner may submit to carry his burden of showing no risk to the beneficiary. Id. at 5-6. Among those are certified records indicating successful completion of counseling or rehabilitation programs; certified evaluations by licensed professionals attesting to the degree of a petitioner's rehabilitation or behavior modification; evidence demonstrating exemplary service to the community; certified copies of police reports and court records relating to the offense (including the original indictment or other charging document, any pre-sentence report, and the conviction judgment; news accounts and trial transcripts describing the nature and circumstances surrounding the petitioner's specified offense and any other criminal, violent, or abusive behavior. Id. The determination whether the petitioner's evidence is credible, and the weight and probative value to be given to that evidence, is within the sole and unreviewable discretion of USCIS. Id. at 6.

Doldol did not submit police reports or court records because those records were destroyed when his conviction was set aside in 2005 pursuant to California Penal Code § 1203.4. However, he did submit other evidence, including a psychological evaluation by Karina Sapag, MFT, indicating a low risk of recidivism, personal letters of reference, employers' letters of reference, a declaration by himself, and a declaration by Cortes,

4

stating that she feels in no danger from Doldol. See FAC Exh. E.

USCIS denied Doldol's I-130 petition on April 27, 2015. See Exh. A to Defs' Motion. The USCIS denial letter began by stating that

> [t]he evidence submitted is insufficient to demonstrate that you were not convicted under California Penal Code 261.5(d), Sex with a minor - Perpetrator Over 21 and Victim Less than 16. The evidence submitted is not sufficient to demonstrate that the particular crime for which you were convicted is not a "specified offense against a minor" as defined under the Adam Walsh Act."

Id.

With regard to the documentation submitted as part of Doldol's effort to establish "no risk" to Cortes, the adult beneficiary, USCIS found that his report of attending counseling and anger management class demonstrated that Doldol had completed some type of rehabilitative efforts, but also found that he had not submitted evidence of those efforts, including dates of attendance or case notes. USCIS also noted that Ms. Sapag had reported on the results of a 3-session psychological evaluation, which included psychometric testing (showing no significant concerns), but that there was no report of counseling or other rehabilitative efforts to support the clinical test results. As for the personal letters, employment letters, and other testimonial evidence, USCIS found that they spoke to Doldol's character and work ethic, but did not shed light on whether he might pose a risk to Cortes' safety and well-being. Id.

If USCIS denies a Form I-130 petition, the petitioner has the right to appeal the denial to the BIA. 8 C.F.R. § 204.2(a)(3). Doldol filed an appeal with the BIA on May 21, 2015. Among other things, he asserted that he was not "convicted" of the underlying offense because his conviction was set aside in 2004 pursuant to California Penal Code § 1203.4. The BIA dismissed the appeal on February 28, 2017. See FAC Exh. G.

The BIA first concluded that Doldol's 1999 criminal conviction for sex with a minor "continued to exist for purposes of the Adam Walsh Act notwithstanding the post-conviction relief obtained . . . under California Penal Code § 1203.4[.]" Id. Citing to Matter of Calcano De Millan, 26 I. & N. Dec. 904, 906-07 (BIA 2017), the BIA found that a

1 United States citizen petitioner like Doldol is "convicted" for purposes of the Adam Walsh
2 Act "where a judgment of guilt has been entered or where a plea, finding, or admission of
3 facts establishes guilt and some form of punishment has been imposed." Id. The BIA
4 further emphasized that relief under, specifically, California Penal Code § 1203.4, did not
5 remove the existence of a conviction if a petitioner was seeking a visa for an alien
6 beneficiary. Id. It also explained that it did not have jurisdiction to review USCIS's
7 discretionary assessment of "no risk" under the Adam Walsh Act. Id. (citing Matter of
8 Aceijas-Quiroz, 26 I.&N. Dec. 294, 300-01 (BIA 2014)).

Cortes filed the present action on March 30, 2017. In the FAC, Cortes asserts that the denial decisions by USCIS and the BIA are arbitrary, capricious, and fail to conform to the government's own guidelines; and that the statute (the Adam Walsh Act) violates her rights under the Due Process Clause and the Equal Protection Clause.

The government now seeks an order dismissing the complaint for lack of subject matter jurisdiction and failure to state a claim.

**DISCUSSION**

A. Dismissal for Lack of Subject Matter Jurisdiction

1. Legal standard

Federal courts are courts of limited jurisdiction. Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013) (citation omitted). As such, a court must presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). Thus, a federal court has no power to consider claims for which it lacks subject-matter jurisdiction, and is under a continuing duty to dismiss an action whenever it appears that subject matter jurisdiction is lacking. Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992); see also Spencer Enters., Inc. v. United States, 345 F.3d 683, 687 (9th Cir. 2003).

2. The government's motion

The government argues that Cortes lacks standing to bring this action, and that

the court lacks subject matter jurisdiction over her APA claim.

        a.      Standing

The government argues that Cortes is not a proper party to an action challenging the denial of the Form I-130 petition, and that the only party who has standing to seek review of the denial of the I-130 is Doldol, the petitioner. In support, the government cites 8 C.F.R. § 103.3(a)(1)(iii)(B) (defining the "affected party" as "the person or entity with legal standing," but not including the beneficiary of a visa petition).

In opposition, Cortes asserts that she "believes" she has standing. She contends that because she "stands to suffer significant loss" – i.e., the deprivation of lawful permanent resident status through Doldol, her U.S. Citizen husband – she has standing to challenge the denial of Doldol's Form I-130 visa petition.

Standing to sue is a necessary component of the court's subject matter jurisdiction. Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004). The standing doctrine ensures that a litigant is the proper party to bring an action by asking if that litigant has a sufficient stake in the matter to invoke federal judicial process. To establish Article III standing, "a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." Raines v. Byrd, 521 U.S. 811, 819 (1997).

Here, Cortes has the burden of establishing the three elements of Article III standing: (1) an injury-in-fact that is concrete and particularized, and actual and imminent; (2) which is fairly traceable to the challenged conduct of the defendant; and (3) which can likely be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Levine v. Vilsack, 587 F.3d 986, 991-92 (9th Cir. 2009).

The court is not persuaded by the government's argument that the definition of "affected person" in 8 C.F.R. § 103.3(a)(1)(iii)(B) operates as a rule of standing governing who may bring a civil action challenging the denial of a family-visa petition which has been denied pursuant to the Adam Walsh Act. Rather, it appears that § 103.3 relates to

7

appeals to the BIA of decisions by Service Officers denying unspecified applications and petitions. In accordance with § 103.3, it was Doldol who appealed the April 27, 2015 decision by USCIS, but § 103.3(a)(1)(iii)(B) does not determine who is a proper party to bring a civil action following the appeal to the BIA.

In addition, while the court has located no case authority governing this issue as it pertains specifically to a challenge to a denial of a family visa petition pursuant to the Adam Walsh Act, the court notes that the Ninth Circuit did issue a decision in 1998 which is potentially relevant. In Abboud v. I.N.S., 140 F.3d 843 (9th Cir. 1998), the plaintiff's father, a U.S. citizen, filed a Form I-130 Petition on the plaintiff's behalf. Id. at 845. The plaintiff challenged the denial of that petition. The government argued that the plaintiff did not have standing to challenge the petition because he was the beneficiary, but was not the petitioner. Id. at 847.

The Ninth Circuit rejected this argument, noting that

> [w]hen a Relative Petition is filed, "[t]he immigrant beneficiary is more than just a mere onlooker; it is her own status that is at stake when the agency takes action on a preference classification petition." As the Relative Petition's beneficiary, Abboud lost a significant opportunity to receive an immigrant visa when the INS denied the Relative Petition. This lost opportunity represents a concrete injury to Abboud that is traceable to the INS's conduct and remediable by a favorable decision in this case. Accordingly, we hold that Abboud has standing in this matter.

Id. (citation omitted) (alteration in original).

Accordingly, for purposes of the present motion, the court is satisfied that Cortes has standing to sue.

        b.     Subject matter jurisdiction

In the FAC, Cortes alleges that the USCIS and BIA denial decisions are arbitrary and capricious, and fail to conform to the government's own guidelines. FAC at 7. In the present motion, the government argues that this court lacks jurisdiction to review the APA claim in Cortes' petition because it arises from USCIS's discretionary "no risk" determination and consequent denial of the I-130 petition.

The government summarizes the APA claim as a claim that USCIS failed to review the evidence submitted in support of Doldol's Form I-130, plus an implied challenge to the "beyond any reasonable doubt" standard. The government asserts that the court lacks jurisdiction to review USCIS's weighing of the evidence and/or to examine the burden of proof USCIS applies to Adam Walsh cases.

In her opposition to the government's motion, Cortes argues that the court has jurisdiction to consider the APA claim. At the hearing, however, her counsel conceded that the court has no subject matter jurisdiction to a claim challenging USCIS's exercise of its discretionary determination that Doldol failed to prove that he posed no danger to Cortes, the proposed beneficiary of the immediate family visa petition.

As a general matter, the APA provides that a person "aggrieved by agency action . . . is entitled to judicial review thereof," 5 U.S.C. § 702, "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." Id. § 701(a). Under 8 U.S.C. § 1154(a), USCIS has sole authority to determine in its "unreviewable discretion" whether an I-130 petitioner with a specified offense against a minor under the Adam Walsh Act has established that he poses "no risk" to the intended alien beneficiary. See 8 U.S.C. § 1154(a)(1)(A)(viii).

Because the statute delegates unfettered discretion to the agency to determine risk on a case-by-case basis, the court is precluded by 8 U.S.C. §1252(a)(2)(B)(ii) from reviewing USCIS's discretionary administration of the statute and its determination that Doldol failed to establish that he poses no risk to the intended beneficiary (Cortes), and is also precluded from deciding the scope of "no risk" under the Act, or to challenge the propriety of the "beyond reasonable doubt" burden of proof.

Thus, because the court lacks jurisdiction over Cortes' challenge under the APA to the denial of Doldol's Form I-130 petition – which includes any challenge to USCIS's weighing of the evidence or its determination that Doldol failed to meet his burden of demonstrating beyond a reasonable doubt that he poses no risk to Cortes – the Rule

12(b)(1) motion to dismiss is GRANTED.[2]

C. Dismissal for Failure to State a Claim

1. Legal standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678-79. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2

---

[2] The government does not argue that the court lacks jurisdiction to review constitutional or statutory claims that are specific to the petition process as applied to Cortes, or that address the general manner in which the Adam Walsh Act is implemented, and indeed, it is clear that the court does have jurisdiction to review colorable constitutional challenges to statutes, whether facially or as-applied. See Kigamba v. Sessions, 680 Fed. Appx. 608 (9th Cir. 2017); Reynolds v. Johnson, 628 Fed. Appx. 497, 498 (9th Cir. 2015); see also Bremer v. Johnson, 834 F.3d 925, 932 (8th Cir. 2016). In this case, the court considers the constitutional claims as part of the Rule 12(b)(6) motion.

1 (9th Cir. 2003). The court may consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

2. Defendants' motion

The government asserts that the remaining claims – that USCIS violated Cortes' due process rights by applying the Adam Walsh Act in an impermissibly retroactive manner, and by interfering with Cortes' ability to live with her spouse; and that the inclusion of I-130 visa petitions for adult beneficiaries does not properly fall within the scope and purpose of the Adam Walsh Act and violates Cortes' equal protection rights – fail to state a legally cognizable claim.

a. Due process

First, the government argues that the denial of Doldol's I-130 Petition did not violate Cortes' due process rights, because there is no fundamental right for spouses to live together in the United States, and because application of the Adam Walsh Act is not impermissibly retroactive. Cortes does not respond to the argument regarding her purported right to live with her spouse in the U.S. (which in any event is not clearly pled in the FAC), but argues only that because USCIS's application of the Adam Walsh Act in this case is based on a conviction that occurred in 1999, years before the enactment of the Adam Walsh Act, it violates the settled presumption against retroactive legislation.

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To maintain a substantive or procedural due process claim, the plaintiff must establish the existence of a liberty or property interest protected by the Constitution. Ching v. Mayorkas, 725 F.3d 1149, 1155 (9th Cir. 2013). Thus, to state a claim, Cortes must plead facts showing that she has a liberty or property interest that has been interfered with by the government, and that the procedures attendant upon that deprivation were

11

constitutionally insufficient. See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty.'" Wilkinson v. Austin, 545 U.S. 209, 221 (2005). A liberty interest may also be created by statute under some circumstances. Id. at 222. However, the failure to receive relief that is purely discretionary in nature does not amount to deprivation of a liberty interest. Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981).

The government argues that to the extent Cortes is attempting to allege that she has a constitutionally protected liberty interest in living with her husband in the United States, she fails to state a claim. The government contends that while Cortes may have a protected liberty interest in marriage, it does not extend to a constitutionally protected liberty interest in choosing where to live with her spouse, as plaintiff suggests. In general, the government asserts that the Adam Walsh Act does not impinge on Cortes' or Doldol's right to marry whomever they please, and that what is at issue is Cortes' claim that her marriage trumps otherwise valid immigration restrictions. The government contends that a plaintiff's constitutional rights to marriage are not implicated when one spouse is removed or denied entry into the United States pursuant to the Immigration and Nationality Act. The government notes that Cortes and Doldol remain legally married and argues that USCIS's decision does nothing to invalidate that marriage.

Cortes alleges that the separation of spouses is a "severe disability" and an "infringement on the ability to remain with one's spouse," FAC at 22, which the court interprets as a suggestion that the denial of the I-130 Petition impermissibly interferes with her constitutionally protected liberty interest in marriage. This appears to be a challenge to the application of the Adam Walsh Act as substantively unconstitutional as applied rather than a challenge to the denial of the petition as a deprivation of liberty without due process.

However, to the extent that Cortes is asserting violation of this liberty interest, the

court notes that such an interest is not protected by the Constitution as judicially enforceable. While the right to marry is a protected liberty interest under the Constitution, Obergefell v. Hodges, 135 S.Ct. 2584, 2598 (2015), the contours of that right do not extend to an interest in being free from arbitrary restrictions on the right to live with one's spouse. See Kerry v. Din, 135 S.Ct. 2128, 2133-38 (2015) (plurality opinion); see also, e.g., Struniak v. Lynch, 159 F.Supp. 3d 643, 662-68 (E.D. Va. 2016) (while visa petitioner may have a constitutionally protected liberty interest in marriage, there is no due process right to engage in "family life"); Jathoul v. Clinton, 880 F.Supp. 2d 168, 171-73 (D.D.C. 2012) (no constitutionally protected liberty interest in living with alien spouse in United States); Bangura v. Hansen, 434 F.3d 487, 496 (6th Cir. 2006) (denial of immediate relative visa to alien who married U.S. citizen did not infringe on fundamental right to marry, in violation of due process rights).

The Adam Walsh Act does not restrict the ability to marry. The Act's restriction on a petitioner's claimed interest in residing in the United States with his/her non-citizen spouse is based on the petitioner's status as a convicted child sex offender. Struniak, 159 F.Supp. 3d at 668. Here, because this restriction on Cortes' U.S. citizen spouse stems from his voluntary choice to engage in criminal conduct that harms vulnerable individuals, Cortes' purported fundamental liberty interest is not judicially enforceable.

In addition, to the extent that this claim can be construed as a procedural due process claim, Cortes has alleged no facts showing that she was deprived of any process to which she was due. USCIS, in its sole discretion, denied Doldol's Form I-130 Petition, based on his prior conviction for a "specified offense against a minor." USCIS provided a detailed explanation of the grounds for its denial. Following that, the BIA reviewed Doldol's challenge and affirmed the USCIS, explaining that it lacked jurisdiction to review USCIS's discretionary decision to deny the visa petition. Accordingly, Cortes' claim fails under either a substantive or procedural due process analysis.

Cortes also asserts that her due process rights were violated by the application of the Adam Walsh Act because the Act is impermissibly retroactive. Although Cortes does

not clarify which interest she believes is at stake here, the court interprets this as a claim of deprivation of property rights without due process. Applying a law retroactively such that it results in "manifest injustice" violates the Due Process Clause. See Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 716 (1974). Manifest injustice may occur where a new law changes existing rights or imposes unanticipated obligations on a party without providing appropriate notice. See id. at 720; see also Landgraf v. USI Film Prods., 511 U.S. 244, 266 (1994) ("The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation.").

As an initial matter, the court notes that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). Nevertheless, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005). Instead, "[a] reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." Ching, 725 F.3d at 1155 (citing Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir.1994)). Here, given the total discretion conferred on USCIS to determine whether a Form I-130 petitioner has established that he/she presents "no risk" to the proposed visa beneficiary, the court finds that Cortes has not alleged a protectable property interest.

Cortes also asserts that in this case, the application of the Adam Walsh Act is impermissibly retroactive because Doldol's conviction occurred in 1999, and the Adam Walsh Act was not enacted until 2006. Moreover, she contends, because the Superior Court of California set aside Doldol's conviction in 2005, pursuant to Penal Code § 1203.4, the conviction for all intents and purposes never occurred.

The court finds that Cortes' argument lacks merit. When a court is deciding whether an agency has given impermissible retroactive effect to a statutory provision, it

first looks to see whether Congress indicated its intent that the statute apply retroactively. Landgraf, 511 U.S. at 280. Courts will construe laws to be prospective in nature unless Congress has explicitly instructed a retroactive application. Vartelas v. Holder, 132 S. Ct. 1479, 1486 (2012).

The plain language of a statute provides the best evidence of legislative intent. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987); see also Royal Foods Co. Inc. v. RJR Holdings, Inc., 252 F.3d 1102, 1108 (9th Cir. 2001) ("There is a strong presumption that the plain language of the statute expresses congressional intent, which is "rebutted only in rare and exceptional circumstances, when a contrary legislative intent is clearly expressed." (citation omitted)). Here, the ordinary sense of the language used in § 1154(a)(1)(A)(viii)(I) covers anyone who has been convicted at any point of a "specified offense," unless the Secretary of Homeland Security determines that the citizen poses no risk to the alien on whose behalf the petition is filed. The text contains no age limitation, qualification, or requirement, and the statute applies to any citizen who committed a qualifying offense, regardless of the age of the prospective visa beneficiary.

Moreover, there is additional evidence that Congress intended for the statute to apply to persons with convictions occurring prior to enactment. The statute instructs that the provision allowing a citizen to petition for immediate relative status "shall not apply" in the present to any citizen who "has been convicted" in the indeterminate past of a qualifying offense. See 8 U.S.C. § 1154(a)(1)(A)(viii)(1). The use of this language clearly shows that the provision applies to any present petition with a past conviction, including convictions that predate the enactment of the Adam Walsh Act. See Struniak, 159 F.Supp. 3d at 660.

Nevertheless, assuming for the sake of argument that the intent of Congress is not clear, the court proceeds to the second step of the analysis. Under this second step, the court asks whether the agency's action has a retroactive effect. Landgraf, 511 U.S. at 280. A law has a retroactive effect if it impairs rights a party possessed when the party acted; increases a party's liability for past conduct; or imposes new duties with respect to

transactions already completed. Id.

Cortes' position appears to be that the statute attaches new legal consequences – denial of a visa petition for immediate relative status – to a pre-enactment conviction, which she suggests is particularly egregious in this case because Doldol's 1999 conviction was set aside in 2005 pursuant to Penal Code § 1203.4, prior to the enactment of the Adam Walsh Act. The court finds, however, that the provision in the Adam Walsh Act regarding the "no-risk" determination is not a retroactive disability. See Reynolds v. Johnson, 628 Fed. Appx. 497, 498 (9th Cir. 2015) ("the AWA 'address[es] dangers that arise postenactment' and therefore 'do[es] not operate retroactively").

The Adam Walsh Act does not affix culpability for prior acts, but rather simply uses prior acts for evidentiary purposes to support a finding of a person's inclination to future dangerousness. Laws that use past data as a factor to determine future eligibility or future rates are not retroactive. See Vartelas, 132 S.Ct. at 1489 n.7. Thus, the USCIS did not apply the Adam Walsh retroactively. See Struniak, 159 F.Supp. 3d at 659-63 ("Because text and purpose indicate that § 1154(a)(1)(A)(viii)(I) regulates a congressionally identified present danger, Vartelas teaches that the law's application to offenders based on pre-enactment conduct is not retroactive.").

As a corollary to the allegation regarding retroactivity, Cortes asserts that because Doldol's conviction has been expunged, it cannot be used as the basis for a denial of a family visa petition under the Adam Walsh Act. See FAC at 5-6, 20-22. Cortes supports the allegation regarding expungement with an attached form from the Contra Costa Superior Court dated February 2005, including a recommendation from the Probation Officer that Doldol be permitted to "change his plea." See FAC Exh. E.

The government argues, however, that Doldol's conviction continues to exist for Adam Walsh purposes. The government notes that the Adam Walsh Act does not provide a definition of the term "conviction" that is specifically applicable to U.S. citizens in visa petition proceedings, but also notes that INA § 101(a)(48)(A) defines the term "conviction" as "a formal judgment of guilt of the alien entered by a court . . . ." The INA,

in turn, explicitly defines "conviction" with respect to "an alien[,]" but the INA is also clear that it defines terms, such as "conviction," "[a]s used in this Act."

The government contends that because the Adam Walsh Act extends its provisions to lawful permanent residents, the definition of "conviction" in INA § 101(a)(48)(A) necessarily applies to lawful permanent resident aliens who file a visa petition on behalf of a relative. The government asserts that while it is true that Penal Code § 1203.4 generally releases an offender from disabilities resulting from his/her conviction, the statute also provides that the prior conviction continues to exist for the purpose of any subsequent criminal proceedings and must be disclosed in any application for public office or licensure by a State or local agency. Moreover, it does not remove any of the restrictions of a conviction that affect an individual's ability to own or possess a firearm; or allow removal of any criminal prohibitions on an offender's eligibility for public office.

For example, in Ramirez-Castro v. INS, the Ninth Circuit explained that, for immigration purposes a person continues to stand convicted of an offense notwithstanding a later expungement under a state's rehabilitative law. Id., 287 F.3d 1172 (9th Cir. 2002). In Castro v. Holder, the court concluded that a conviction expunged under Penal Code § 1203.4 retains immigration consequences. Id., 340 Fed. App'x. 410 (9th Cir. 2009). In Calcano, the BIA made clear that the setting aside of a conviction under a state's rehabilitative law – such as Penal Code § 1203.4 – does not operate to totally eliminate that conviction when an immigration benefit is sought. Id., 26 I. & N. Dec. at 906-07.

Cortes appears to have misconstrued the legal significance of the order that Doldol obtained from the Superior Court. Under California law, statutory relief from "all penalties and disabilities resulting from the offense" does not "expunge" the conviction, nor render it a "legal nullity." See People v. Seymore, 239 Cal. App. 4th 1418, 1429 (2015). Section 1203.4 "simply authorizes a court to grant relief to individuals who successfully complete the terms of probation by mitigating some of the consequences of

17

conviction." Baranchik v. Fizulich, 10 Cal. App. 5th 1210, 1225 (2017). "The statute does not purport to render the conviction a legal nullity. Instead it provides that, except as elsewhere stated, the defendant is 'released from all penalties and disabilities resulting from the offense.'" Id. (citation omitted).

Thus, for example, a prior conviction that has been set aside pursuant to § 1203.4 may nevertheless be considered in determining the sentencing level for subsequent offenses. See, e.g., U.S. v. Martinez, 377 Fed. Appx. 708 (9th Cir. 2010); U.S. v. Stoterau, 524 F.3d 988, 1001 (9th Cir. 2008); see also U.S. v. Crowell, 374 F.3d 790, 792 (9th Cir. 2004) ([a]lthough 'expungement' may mean different things in different states, in general when a defendant moves to expunge records, she asks that the court destroy or seal the records of the fact of the defendant's conviction and not the conviction itself"). The same rule applies in California courts. See, e.g., Adams v. Cnty. of Sacramento, 235 Cal. App. 3d 872, 877-78 (1991) (comparing Kansas statute to California statute, and noting that expungement under Penal Code § 1203.4 "does not eviscerate a conviction or purge a defendant of the guilt established thereby").

### b. Equal protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

While the Fifth Amendment does not contain an equal protection Clause, the Fifth Amendment's Due Process Clause includes an equal protection component. See Bolling v. Sharpe, 347 U.S. 497, 499-500 (1954); see also United States v. Windsor, 133 S.Ct. 2675, 2695 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws."); Buckley v. Valeo, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment.").

In considering an equal protection challenge, the court "must first determine what

18

classification has been created" by the legislation at issue. Aleman v. Glickman, 217 F.3d 1191, 1195 (9th Cir. 2000); see also Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 589 (9th Cir. 2008). The plaintiff must allege facts showing that the "law is applied in a discriminatory manner or imposes different burdens on different classes of people." Lazy Y Ranch, 546 F.3d at 589 (citation omitted).

Here, the basis of Cortes' equal protection challenge is unclear. She alleges that "the statute and the concomitant regulations[ ] violate the Equal Protection Clause in this case as she is being treated the same as if she were a vulnerable minor and in genuine danger from a predatory adult." FAC at 5-6. She also asserts that the statute violates the Equal Protection Clause because it amounts to "disparate treatment of similarly situated aliens under the immigration laws." Id. at 15. She claims that "the general class of aliens are the adult beneficiaries of immediate relative petitions filed by a United Citizen [sic] or lawful permanent resident spouse" and that "[w]ithin that group of adult aliens, one class will have their visa granted while the other class of adult aliens will be denied under the Adam Walsh Act." Id. at 17.

It is not clear how these allegations regarding adult beneficiaries constitutes an equal protection challenge. The plain language of the statute does not make any distinction between adult and child beneficiaries. It simply requires USCIS to make a "no risk" determination with respect to every beneficiary of an I-130 petition that is filed by a U.S. citizen convicted of a "specified offense against a minor." Thus, to the extent this claim is comprehensible, Cortes appears to be seeking a judicial creation of a classification distinguishing between adult and minor beneficiaries, where no such classification has been created by Congress.

Because of the lack of clarity regarding the legal basis for this claim, the court will permit Cortes to amend the complaint to attempt to state an equal protection claim.

**CONCLUSION**

In accordance with the foregoing, the motion to dismiss for lack of subject matter jurisdiction is GRANTED. The motion to dismiss for failure to state a claim is GRANTED,

with leave to amend as stated above. Any amended complaint shall be filed no later than November 27, 2017. No new parties or causes of action may be added without leave of court.

**IT IS SO ORDERED.**

Dated: October 27, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge